IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JASON MICHAEL PAWLOWICZ,

                                                    OPINION AND ORDER

                    Plaintiff,

                                                    19-cv-537-bbc

          v.

ANDREW SAUL,
Commissioner of Social Security,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Jason Pawlowicz is seeking review of a final decision denying his claim for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g).   Plaintiff seeks a remand of that decision, arguing that the administrative law judge who decided the case:  (1) improperly concluded that plaintiff's ankle problems resolved after surgery; (2) erred in discounting the functional capacity assessment provided by plaintiff's occupational therapist; (3) failed to account properly for a mental health limitation assessed by the state agency psychologist; and (4) failed to analyze whether plaintiff's migraine headaches met or equaled a listed impairment or caused plaintiff any additional functional limitations.  For the reasons explained below, I am not persuaded by plaintiff's arguments.  Therefore, I will affirm the commissioner's decision.

The following facts are drawn from the administrative record (AR).

1

FACTS

Plaintiff Jason Pawlowicz filed an application for disability benefits on November 3, 2016 and an application for supplemental security income on June 8, 2017. AR 13. In both applications, he alleged that he had been disabled since November 3, 2016 because of numerous physical and mental impairments, including hip, back, ankle, shoulder and neck problems, migraines and depression. AR 13, 69. Plaintiff was born on June 26, 1985, making him 31 years old at the time of his alleged disability onset date. AR 26.

After his applications were denied initially on January 12, 2017, and upon reconsideration on July 6, 2017, plaintiff filed a request for an administrative hearing. AR 13. On December 20, 2018, Administrative Law Judge David Skidmore held a hearing at which plaintiff and a vocational expert testified. Plaintiff was assisted by a non-attorney representative at the hearing. Id.

The administrative law judge issued a written decision on January 25, 2019, finding that plaintiff was severely impaired by chronic left ankle sprain and tendinopathy post left ankle ligament reconstruction, left shoulder tendonitis, major depressive disorder, posttraumatic stress disorder and migraine headaches. AR 16, 28. He found that plaintiff's migraines did not meet or equal the frequency or marked limitation requirements for the relevant listed impairment, Listing 11.02. AR 17.

The administrative law judge further found that plaintiff retained the residual functional capacity to perform light work with the following limitations: no more than five hours of standing and walking during an eight-hour workday; sitting up to six hours a day

with normal breaks; occasional overhead reaching with the left upper extremity; and simple, routine tasks involving no more than occasional changes in the workplace and occasional decisionmaking.  AR 19.  In reaching his decision, the administrative law judge found plaintiff's reported symptoms to be "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  AR 20.  He then reviewed plaintiff's treatment records and the opinion evidence.  With respect to the opinion evidence, the administrative law judge stated that he gave great weight to the June 2017 opinion of the state reviewing psychologist (Dr. Michael Bohnert) at the reconsideration level of review, who found that plaintiff had moderate limitations carrying out detailed instructions, maintaining attention and concentration for extended periods and interacting with the general public.  AR 22 (citing AR 115-17).  He also gave great weight to the December 12, 2017 opinion of plaintiff's treating physician, Dr. Jeff Tavassoli, who stated that plaintiff could return to sedentary-level work on December 18, 2017 and return to work with no walking, standing or sitting restrictions as of January 1, 2018.  AR 23 (citing AR 1483, 1485).  However, the administrative law judge gave little weight to the April 21, 2017 residual functional capacity evaluation undertaken by occupational therapist Christopher Suess, who found that plaintiff's "overall performance fell into the sedentary physical demand level as he did not tolerate standing, walking, awkward postures, or materials handling on a frequent basis." AR 22, 282.  (The administrative law judge's specific findings related to the relevant opinion evidence are discussed below.)

The administrative law judge determined that plaintiff could not perform his past relevant work as collection clerk, clerical checker, loan officer and telephone solicitor.  AR 25-26.  Relying on the testimony of a vocational expert who testified in response to a hypothetical question based on plaintiff's residual functional capacity assessment, the administrative law judge found that jobs existed in significant numbers in the national economy that plaintiff could perform, including inspector and hand packager, officer helper and label coder.  AR 27.

OPINION

In reviewing the administrative law judge's decision, I must determine whether the decision is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted).  This deferential standard of review "does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision." Id.  The administrative law judge must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination." Id.  See also Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."); Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009).

Plaintiff contends that the administrative law judge erred in four main ways:  (1) improperly concluding that plaintiff's ankle problems were resolved after surgery; (2)

4

discounting the functional capacity assessment of occupational therapist Suess that plaintiff was limited to sedentary work with occasional handling; (3) failing to account properly for the moderate social interaction limitation assessed by state agency psychologist Dr. Bohnert; and (4) failing to analyze whether plaintiff's migraine headaches met or equaled a listed impairment or caused plaintiff any additional functional limitations.  I address these challenges separately below.

### A.  Ankle Problems

Plaintiff argues that he suffered from pain and decreased mobility in his left ankle that affected his ability to work.  In his written decision, the administrative law judge summarized plaintiff's medical records concerning his left ankle, noting that after his diagnosis of  tendinopathy with a mild tendon tear, a tight heel cord and subtle cavus foot, plaintiff underwent surgery in August 2017 and was ordered to remain off his left foot for four months.  AR 21 (citing 1463-65).  The administrative law judge recognized that following his surgery, plaintiff was treated with compression stockings, orthotics, heat and ice packs and aquatic and physical therapy.  AR 21 (citing AR 1517, 1643, 1651-54, 1662, 1824-25, 1840, 1849).  He determined that even though plaintiff continued to complain about left ankle pain, the record showed that plaintiff experienced significant improvement after his surgery, his ankle was stable and his care providers noted normal or only slightly diminished gait, balance, strength, range of motion and neurological functioning.  Id.

5

Plaintiff takes issue with the administrative law judge's conclusion that his ankle problem resolved after he had ankle surgery in August 2017, arguing that the administrative law judge is not competent to make that determination.  In support of his argument, he points to one record in which he reported to a nurse practitioner on April 20, 2018 that he was "frustrated by the outcome of his left ankle surgery" because "[h]e felt that at first it was getting better quickly and now feels as if though it is stopped, improving."  AR 851.  Plaintiff also cites his hearing testimony that he has numbness and pain in his ankle.  AR 40.

However, the administrative law judge cited several examples in the record that demonstrated plaintiff's improvement, including that:

- Plaintiff reported on November 7, 2017 that he was not having any pain and could perform limited weight bearing activities.  AR 1479.

- Dr. Tavassoli released plaintiff to work with no restrictions as of January 1, 2018.

- Plaintiff shoveled and used a snow blower in February 2018.  AR 1502, 1505.

- Plaintiff demonstrated improved ankle mechanics, mobility and pain control during physical therapy and home exercises.  E.g., AR 1481-82, 1489, 1510, 1522, 1534-38.

- Plaintiff reported to Dr. Tavassoli on April 19, 2018 that his ankle pain was improving, and Dr. Tavassoli noted that plaintiff was doing well clinically and radiographically.  AR 1559-62.

- In May 2018, plaintiff was discharged from physical therapy because he showed "significant" improvement in functional strength and balance.  AR 1578-80.

It was reasonable for the administrative law judge to conclude from these records that plaintiff's ankle condition had improved.  In the absence of any specific limitations assessed

by plaintiff's surgeon or other medical providers, it also was reasonable for the administrative

law judge to conclude that plaintiff was capable of standing or walking up to five hours and

sitting up to six hours in a normal workday.  (Plaintiff does mention occupational therapist

Suess's April 2017 opinion limiting him to non-frequent walking and standing, but that

opinion was issued four months before plaintiff's surgery.)  Although plaintiff may not agree

with the administrative law judge's interpretation of the evidence, that is not a basis for

remand.  LDR v. Berryhill, 920 F.3d 1147, 1151-52 (7th Cir. 2019); Brown v. Colvin, 845

F.3d 247, 251 (7th Cir. 2016) (The court "must affirm the ALJ's decision even if reasonable

minds could differ about the ultimate disability finding.").

## B.  Suess's Opinion

In a functional capacity evaluation performed on April 21, 2017, occupational

therapist Christopher Suess found that plaintiff's "overall performance fell into the sedentary

physical demand level as he did not tolerate standing, walking, awkward postures, or

materials handling on a frequent basis."  AR 282.  The administrative law judge gave this

opinion little weight, noting that an occupational therapist is not an acceptable medical

source under the regulations, 20 C.F.R. §§ 404.1516(a) and 416.913(a), and that a

claimant's exertional level is an issue reserved for the commissioner.

Plaintiff agrees that medical opinions that a claimant has a particular residual

functional capacity are not binding or given any special significance, 20 C.F.R. §

404.1527(d)(2-3) (applicable to claims filed before Mar. 27, 2017); Soc. Sec. Ruling 96-5p,

but argues that the administrative law judge in this case improperly discounted Suess's opinion on this ground without giving it any consideration.  Contrary to plaintiff's assertion, however, the administrative law judge stated that he gave Seuss's opinion full consideration but concluded that it offered minimal insight into plaintiff's ability to function because Suess issued the opinion well before plaintiff's left ankle surgery, after which plaintiff experienced improvement.  AR 23.  As discussed above, the administrative law judge reasonably concluded that plaintiff's condition improved after his surgery.

Although plaintiff mentions that Suess's limitation of non-frequent handling may reduce the number of unskilled, sedentary jobs available, he has not developed his argument in any meaningful way.  Swyear v. Fare Foods Corp., 911 F.3d 874, 886 (7th Cir. 2018) (failure to develop argument in brief results in waiver); M.G. Skinner & Associates Insurance Agency v. Norman-Spencer Agency, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").  For example, plaintiff has not discussed a handling limitation, any other support for it in the record or the impact of a "non-frequent" handling limitation on the administrative law judge's residual functional capacity assessment for light work.  Without more, plaintiff cannot show that the administrative law judge erred in giving little weight to Suess's opinion. Stepp v. Colvin, 795 F.3d 711, 718 (7th Cir. 2015) ("We uphold all but the most patently erroneous reasons for discounting a treating physician's assessment.") (internal quotation omitted); Castile v. Astrue, 617 F.3d 923, 929 (7th Cir. 2010) ("In analyzing an ALJ's

opinion for such fatal gaps or contradictions, [courts] give the opinion a commonsensical reading rather than nitpicking at it.").

## C. Social Interaction Limitation

At the reconsideration level of review in June 2017, Dr. Bohnert found that plaintiff had a moderate limitation interacting appropriately with the general public. AR 116. In the narrative section related to social interaction limitations, the doctor stated that plaintiff "will have the mental capacity to sustain the basic demands associated with relating adequately with supervisors/co-workers/occasional problems with the general public." AR 117. Dr. Bohnert also noted that "[f]urther improvement is likely by the durational date with persistent treatment and compliance." Id. Although the administrative law judge gave great weight to Dr. Bohnert's overall opinion, he did not mention the social interaction limitation in particular. AR 22.

Plaintiff contends that the administrative law judge erred in failing to explain why he did not include Dr. Bohnert's limitation related to occasional contact with the public in his residual functional capacity assessment and the resulting hypothetical question to the vocational expert. However, as defendants argue, even if the administrative law judge erred in failing to address or adopt this specific limitation, plaintiff has failed to show that the error harmed him. McKinzey v. Astrue, 641 F.3d 884, 892 (7th Cir. 2011) ("[W]e will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same."); Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir.

2010) ("The absence of a rationale may constitute harmless error if the agency's decision is overwhelmingly supported by the record and thus remand would be pointless.").

Relying on the vocational expert's testimony, the administrative law judge found that a hypothetical individual with plaintiff's age, education, work experience and residual functional capacity could perform work as an inspector or hand packager (Dictionary of Occupational Titles (DOT) code 559.687-047), office helper (DOT code 239.567-010) and label coder (DOT code 920.587-014). AR 27, 62-64. As defendant points out, the DOT description of each of these jobs rates the need to relate to people. DOT (4th ed. 1991), Appx. B—Explanation of Data, People, and Things, 1991 WL 688701 (Jan. 1, 2016). The fifth digit of the DOT number code reflects relationships to people by identifying a number indicating the highest appropriate function for that job. Id. The fifth digit for both the inspector or hand packager and the label coder jobs is eight, which means "Taking Instructions-Helping: Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to "non-learning" helpers." Id. For the office helper job, the fifth digit of is six, which means "Speaking–Signaling: Talking with and/or signaling people to convey or exchange information. Includes giving assignments and/or directions to helpers or assistants." Id. Notably, there is no mention of public interaction, and interaction with people is described as "not significant." DOT code 559.687-074, 1991 WL 683797 (Jan. 1, 2016); DOT code 239.567-010, 1991 WL 672232 (Jan. 1, 2016); DOT code 920.587-014, 1991 WL 687-915 (Jan. 1, 2016).

10

I agree with defendant that these descriptions show that the jobs the vocational expert cited were consistent with Dr. Bohner's restriction of no more than occasional interaction with the general public.  Moreover, plaintiff did not respond to defendant's harmless error argument in his reply brief, thereby waiving the issue.  Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Accordingly, I find that the administrative law judge did not commit reversible error in failing to address Dr. Bohnert's opinion with respect to plaintiff's social interaction limitation.

### D.  Migraines

The administrative law judge determined that plaintiff was severely impaired by migraine headaches but that his condition did not meet or equal Listing 11.02(B) and (D) for epilepsy, which provides guiding principles for evaluating migraine headaches.  Snow v. Berryhill, 2019 WL 1873551, at *4 (N.D. Ind. Apr. 26, 2019) (Commissioner routinely considers migraines under criteria for epilepsy listing).  Plaintiff does not challenge the application of Listing 11.02(B) and (D), but he argues that the administrative law judge erred by merely stating the requirements of the listing without discussing how the medical evidence failed to meet or equal those requirements.  Minnick v. Colvin, 775 F.3d 929, 935 (7th Cir. 2015) (quoting Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004) ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing.").  He

points out that he began having migraine headaches on November 3, 2016, AR 472, and by November 28, 2017, he was reporting having them two to three times per week. AR 895. Plaintiff also notes that on April 18, 2018, he reported having one to two migraines a week, AR 850-51, and on July 11, 2018, he reported having them four to five times a week. AR 1582.

Listing 11.02(B) requires seizures (or in this case migraines) at least once a week for at least three consecutive months, despite adherence to prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 11.02(B). Listing 11.02(D) requires seizures occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment, and a marked limitation in one of the following areas: (1) physical functioning; (2) understanding, remembering, or applying information; (3) interacting with others; (4) concentrating, persisting, or maintaining pace; or (5) adapting or managing oneself. "'Despite adherence to prescribed treatment' means that you have taken medication(s) or followed other treatment procedures for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 11.00(C).

In this case, the administrative law judge found no evidence that plaintiff's migraines occur at a frequency consistent with Listing 11.02 or that they result in a marked limitation in any of the prescribed areas. AR 17. Although he recognized that there is evidence in the record that plaintiff experienced migraines at least once a week over a period of several

12

months, he found that plaintiff had failed to adhere to his physicians' prescribed treatment. AR 17, 21. Specifically, the administrative law judge noted that plaintiff continued to smoke despite warnings that smoking worsened his migraines and took less than the suggested dose of oral medication for his migraines. AR 21 (citing AR 1641, 1766, 1838). He also gave great weight to the opinion of plaintiff's therapist, Dr. Corrigan, that migraines were affecting plaintiff's mental health. AR 21, 23, 2017. In light of the combined effects from plaintiff's mental impairments and migraine headaches, the administrative law judge limited plaintiff to simple, routine tasks involving no more than occasional changes in the work setting or occasional decision making and remaining on task 90 percent of an average workday. AR 21.

Apart from pointing to statements about the frequency of his headaches, plaintiff has not challenged the administrative law judge's reasoning or his findings regarding no marked limitation or plaintiff's failure to adhere to prescribed treatment. Ribaudo v. Barnhart, 458 F.3d 580, 583 (7th Cir. 2006) (plaintiff has burden of showing impairments satisfy all criteria specified in listing); Chapman v. Berryhill, 2018 WL 6804483, at *2 (W.D. Wis. Dec. 27, 2018) (same). He also has not shown that his migraines support any particular functional limitation other than the ones assessed by the administrative law judge. Dudley v. Berryhill, 773 Fed. Appx. 838, 842 (7th Cir. 2019) ("Critically, Dudley did not identify any limitations that the ALJ omitted and should have included.").

Accordingly, I am affirming the commissioner's decision denying benefits and dismissing plaintiff's appeal.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, is AFFIRMED and plaintiff Jason Michael Pawlowicz's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 14th day of July, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

14